IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ELISABETH GREENHILL and
JONATHAN GREENHILL,

                    Defendants.

CRIMINAL CASE NO.

1:18-CR-00108-MHC-JFK

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court are Defendant Elisabeth Greenhill's motion [Doc. 44] seeking a bill of particulars and Defendant Jonathan Greenhill's motions [Doc. 47] for a bill of particulars, [Doc. 46] to strike surplusage and [Doc. 48] for a severance of Defendants.  The Government opposes the pending motions.  [Docs. 53, 54, 55]. Although Defendants requested and were granted time to file reply briefs, only Defendant Elisabeth Greenhill filed a reply in support of her request for a bill of particulars.  [Doc. 59].

## I.      The Indictment

Count One of the Indictment charges Defendant Elisabeth Greenhill ("E.G.") and Defendant Jonathan Greenhill ("J.G."), beginning in 2015 and continuing to December 2017, with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. [Doc. 1, Count One]. In particular, this count alleges that Defendants conspired to devise a scheme and artifice to defraud and obtain money by means of materially false representations and promises or by omission of material facts, knowing such representations and omissions were false when made, and causing interstate wire communications to be made in furtherance of the scheme, in violation of 18 U.S.C. § 1343. [Id. ¶ 1]. As background, Count One alleges that Defendant E.G. owned and operated Mission Trip Airfare ("MTAF") and that Defendant J.G. was an employee and, further, that MTAF "advertised that it provided 'low fares exclusively for faith-based and humanitarian organizations.'" [Id. ¶¶ 2-3 (no citation provided)].

Count One further sets forth the manner and means by which the conspiracy to defraud was conducted. The Indictment alleges that Defendants stole the funds that faith-based and humanitarian groups sent to MTAF for tickets; those funds often being sent using interstate wires. Beginning in 2015, instead of sending the funds to travel agencies to purchase tickets, Defendants used the funds for their personal benefit.

2

Defendants, due to MTAF's relationship with the travel agencies, initially were allowed to put tickets on credit and falsely made statements to the travel agencies that payment would be made on the outstanding balances.  Such statements induced the travel agencies to continue to purchase tickets for MTAF and allowed Defendants to misappropriate funds. [Id. ¶¶ 4-5].  The Indictment further alleges that, when the travel agencies threatened to stop doing business with MTAF, Defendants used new customer funds to pay down the outstanding balances, and, when the faith-based and humanitarian groups complained about not receiving tickets, Defendants falsely promised refunds - however, Defendants knew that MTAF did not have the funds to make refunds.  [Id. ¶ 6].

The Indictment then sets forth a number of email complaints by date and customers complaining about the failure to receive a refund and the difficulties caused due to the loss of the funds sent for the tickets and threatening to take legal action.  [Id. ¶ 7].  The Indictment further alleges that, despite these complaints, Defendants continued to make reservations and steal funds from new customers, citing a specific example in August 10, 2017, where funds for tickets were diverted to Defendants' personal use. [Id. ¶ 8].  The Indictment alleges that this scheme caused travel agencies

3

and the faith-based and humanitarian groups to lose hundreds of thousands of dollars most of which was used for Defendants' personal benefit.  [Id. ¶ 9].

Counts Two through Six charge Defendants E.G. and J.G. with substantive wire fraud counts in violation of 18 U.S.C. § 1343, 1349 and 2 (aiding and abetting).  [Id., Counts Two - Six].  The five offenses are alleged to have occurred on March 30, 2017, June 29, 2017, July 13, 2017, August 24, 2017, and November 22, 2017, involving wire transfers of funds from specific faith-based or humanitarian groups.  [Id.].  After incorporating by reference the factual allegations in paragraphs 1 through 9, the Indictment alleges that Defendants devised a scheme and artifice to defraud, aided and abetted by each other, and that, for the purpose of executing that scheme, "did, with the intent to defraud, cause to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, the [afore-described] electronic financial transactions from [MTAF] customers . . . ." [Id.].

## II.    Bill of Particulars

Each Defendant, contending that the Indictment fails to "specify what acts of omission" he or she committed but instead only alleges that either Defendants or MTAF engaged in certain conduct, seeks the "the material facts" he or she "allegedly

4

omitted during the scope of the conspiracy." [Doc. 44 at 1-3; Doc. 47 at 1].[1]  In response, the Government argues that the Indictment informs Defendants of the details necessary to prepare a defense, to minimize surprise at trial and to plead double jeopardy as well as describing the manner and means by which the scheme to defraud was conducted and the facts concealed in conducting the scheme - that is, that Defendants were diverting the funds to their personal benefit. [Doc. 53 at 6-9]. The Government further contends that Defendants are seeking evidentiary detail not authorized by a bill of particulars. [Id.].  In reply, Defendant E.G. concedes that the Indictment "describes **what** happened but not specifically **who** committed these acts." [Doc. 59 at 3 (emphasis in original)].  Defendant requests that the Government identify which Defendant engaged in which acts in support of the conspiracy charged in Count One. [Id.].

"The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Warren, 772 F.2d 827, 837 (11th

---

[1]Defendant J.G. also seeks the identity of all known unindicted co-conspirators or aiders and abettors. [Doc. 47 at 1]. The Government has agreed to provide that information. [Doc. 53 at 7 n.1].

AO 72A
(Rev.8/82)

Cir. 1985); see also United States v. Hassoun, 477 F. Supp. 2d 1210, 1227-28 (S.D. Fla. 2007) ("A request for bill of particulars is, *inter alia*, befitting in those instances where defendant seeks further clarity and precision with regard to the charges that he is facing in order to adequately prepare a defense.").  "Generalized discovery is not the proper function of a bill of particulars." Warren, 772 F.2d at 837 (citing United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)); see also United States v. Roberts, 174 Fed. Appx. 475, 477 (11th Cir. 2006) (same).  Likewise, a defendant may not use a bill of particulars "to acquire 'information which is already available through other sources'" such as discovery.  United States v. Holzendorf, 576 Fed. Appx. 932, 935 (11th Cir. 2014) (citation omitted).  While the court "is vested with broad discretion in deciding whether a bill of particulars should be granted[,]" United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985), "'where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request . . . may constitute reversible error[,]'" Id. (quoting United States v. Crippen, 579 F.2d 340, 349 (5th Cir. 1978)).  The conspiracy count of the Indictment, which is set out in detail *supra*, sufficiently alleges that charge by stating the elements of the offense charged therein and by providing details

6

regarding the manner and means - or the scheme to defraud - by which Defendants participated in the charged conspiracy. [Doc. 1].

The court finds that Defendants' request for the specific "material omissions" made by each Defendant in furtherance of the scheme to defraud seeks evidentiary detail - in light of the information already set forth in the Indictment - that is not appropriate in a bill of particulars. See Holzendorf, 576 Fed. Appx. at 935-36 (finding that the defendant's request for "every single material misrepresentation . . . was nothing more than a thinly veiled attempt to have the government make a detailed disclosure of the evidence that it planned to present at trial" which "is not an appropriate basis for seeking a bill of particulars"); Roberts, 174 Fed. Appx. at 477 (a bill of particulars "'is not designed to compel the government to [provide] detailed exposition of its evidence'") (citation omitted); United States v. Scrushy, 2004 WL 483264, at *9 n.5 (N.D. Ala. March 3, 2004) ("[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge. The function of the bill of particulars is to reduce surprise at the *charge*, that is, to enable the defendant to identify what he is alleged to have done in violation of law. It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.") (emphasis in original); United States v. Giffen,

379 F. Supp. 2d 337, 346 (S.D. N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense."). In light of the information provided in the Indictment, as outlined *supra*, the court finds that Defendants seek evidentiary details not appropriate for a bill of particulars. <u>See</u> <u>United States v. Levy</u>, 2013 WL 664712, at *13 (S.D. N.Y. February 25, 2013) (defendant's "request for a recounting of each specific misrepresentation and omission alleged is simply a request to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars") (citation and internal quotation marks omitted); <u>United States v. Ghavami</u>, 2012 WL 2878126, at *4 (S.D. N.Y. July 13, 2012) (finding that the defendant's request for the exact misrepresentations made, as well as specific details about the harm caused, is not properly the subject of a bill of particulars).

Furthermore, contrary to Defendants' request in this case, "[c]ase law is also clear that the Government is not required to identify . . . specific acts or overt acts done in furtherance of a charged conspiracy by particular defendants." <u>United States v. Leiva-Portillo</u>, 2007 WL 1706351, at *15 (N.D. Ga. June 12, 2007) (citing, *inter alia*, <u>United States v. Rosenthal</u>, 793 F.2d 1214, 1227 (11th Cir. 1986)); <u>and see</u> <u>United States v. Repke</u>, 2011 WL 1325610, at **3-4 (N.D. Ga. March 11, 2011) (rejecting the

8

defendant's request that he be provided details of the acts committed by him, not just all the defendants, the court found that the defendant's request "regarding details of his alleged conduct in the conspiracy is beyond the proper scope of a bill of particulars") (citing, *inter alia*, United States v. Griesbeck, 2011 WL 528579, at *4 (E.D. Mich. February 8, 2011) ("defendant is not entitled to information regarding the 'precise nature, character and circumstances of any words uttered or acts engaged in' by him") (citation omitted); United States v. Payne, 2010 WL 3081952, at *3 (M.D. Tenn. August 6, 2010) ("finding defendant not entitled to a list of the overt acts that the government alleges he committed in furtherance of the conspiracy")), report and recommendation adopted by 2011 WL 1325609 (N.D. Ga. April 6, 2011); accord United States v. Wilson, 2013 WL 820726, at *2 (S.D. Ala. March 5, 2013) ("'[a] bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy[; n]or is the government required to provide defendants with all overt acts that might be proven at trial'") (quoting Rosenthal, 793 F.2d at 1227)).

And Defendants seek the details about the acts in which *he or she* engaged in commission of the charged conspiracy.  It is doubtful that Defendants could establish that, without the Government providing the details about this evidence, he or she was

not able to prepare a defense to the charged offense or was surprised.  In a case where the evidence being sought by a bill of particulars consists of activities in which a defendant participated or witnessed, the defendant "'could hardly have been surprised by the government's proof at trial.'"  United States v. Cantu, 557 F.2d 1173, 1178 (5th Cir. 1977) (quoting United States v. Pena, 542 F.2d 292, 293-94 (5th Cir. 1976)); see also United States v. Williams, 113 F.R.D. 177, 179 (M.D. Fla. 1986) (When the information sought involves "events in which one or more of the defendants participated, or which occurred in one or more of the defendants' presence[, t]he Eleventh Circuit has held that this sort of information need not be furnished in a bill of particulars.") (citations omitted).  Quite frankly, Defendants should be well aware of which of them - or another employee of MTAF - interacted with the travel agencies or the customer groups and engaged in the conduct underlying the scheme to defraud, including failing to inform the victims that Defendants were diverting the funds to their personal benefit.

Defendants have not demonstrated that the information requested in the bill of particulars is essential to preparation of his or her defense at trial.  For the reasons stated, the court **DENIES** Defendants' requests [Docs. 44 and 47] for a bill of

particulars with the exception of the Government providing the identity of all known co-conspirators or aiders and abettors.

### III.    Strike Surplusage

Defendant J.G. seeks to have stricken from the indictment language that he contends is extraneous, irrelevant and prejudicial and language that he contends is confusing.  [Doc. 46].  Specifically, Defendant asks that the following phrase be stricken, at least after the first time set forth, "faith-based and humanitarian groups," as being prejudicial and that the reference in Counts Two through Six to incorporating paragraphs 1 though 9 be changed to paragraphs 2 through 9 to avoid confusion.  [Id.]. The Government opposes the motion to strike arguing that Defendant has not established that the challenged language is irrelevant as well as inflammatory and prejudicial or that the allegation in Counts Two through Six is confusing.  [Doc. 54]. Although allowed an opportunity to reply to the Government's arguments, Defendant declined.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that, "Upon the defendant's motion, the court may strike surplusage from the indictment . . . ."  Fed. R. Crim. P. 7(d) (as amended 2009).  Although Rule 7(d) "authorizes the Court to strike surplusage from an indictment on motion of the defendant[,]" Fed. R. Crim. P.

7(d), "[a] motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. . . .  [T]his is a most exacting standard."  United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992) (citations and internal quotation marks omitted); accord United States v. Brye, 318 Fed. Appx. 878, 880 (11th Cir. 2009) (same); United States v. Smallwood, 2011 WL 2784434, at *10 (N.D. Tex. July 15, 2011) ("the court will not strike allegations that are *relevant*, no matter how prejudicial or inflammatory they may be to the defendant") (emphasis in original).  And, in order to determine whether the allegations are relevant to the charges and the evidence introduced at trial, "[t]he Court may reserve ruling on a motion to strike surplusage until hearing the evidence and determining its relevance at trial."  United States v. Al-Arian, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004).

With respect to Defendant's request to amend the Indictment in Counts Two through Six to allege that paragraphs 2 through 9, instead of 1 through 9, are incorporated by reference to avoid confusion, the court finds the Government's argument persuasive.  Defendant argues that paragraph 1 alleges the elements of the conspiracy count which, although not stated, he apparently contends has no place being incorporated into the legal elements of the substantive wire fraud counts.  Defendant

12

offers no legal authority in support of his argument.  [Doc. 46 at 2-3].  However, as the Government points out, the language incorporating paragraphs 1 through 9 only reference incorporating "*factual* allegations" not "*legal* allegations."  [Doc. 54 at 6 (emphasis in original)].  Defendant simply has not established that the incorporation of the factual allegations in paragraph 1 are confusing much less that they are irrelevant to the offenses charged in Counts Two through Six.  See Awan, 966 F.2d at 1426.

With respect to Defendant's request to strike the references to "faith-based and humanitarian groups" because the phrase is not an element of the offenses charged and "is intended to incite the passions of believers and non-believers alike[,]" thereby placing him at a disadvantage, is not persuasive.  The Government counters Defendant's allegations by pointing out that the business Defendants used to defraud the victims in this case is named, "*Mission Trip* Airfare," and that it advertized providing "low fare exclusively for faith-based and humanitarian organizations." [Doc. 54 at 3-4 (emphasis in original)].  The Government states that use of the phrase in the Indictment simply reflects the evidence to be introduced at trial, that is, that the defrauded customers were either faith-based or humanitarian groups.  [Id. at 3-6].  The court notes that Defendants, not the Government, selected the customer base that they

13

decided to defraud and that the Government is not mis-characterizing or mis-labeling those groups to prejudice Defendant.

Accordingly, the court finds that the allegedly surplus language in the Indictment identified by Defendant in his motion contains allegations that are relevant and material to the charged offenses. Because Defendant must prove both that the challenged allegations are not relevant as well as being inflammatory and prejudicial, see United States v. Salvagno, 306 F. Supp. 2d 258, 268 (N.D. N.Y. 2004) ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.") (citations and internal quotation marks omitted), the court recommends that the motion to strike be denied and that any reconsideration of the motion occur after introduction of the Government's evidence at trial. See United States v. Kelley, 2009 WL 2176347, at *2 (S.D. Ala. July 17, 2009) ("After the court has heard all the evidence, the defendants may make a motion to reconsider this ruling as to specific surplus language that they contend is unfairly prejudicial and inflammatory); United States v. Alexander, 2008 WL 2130185, at *4 (W.D. La. May 18, 2008) (noting, to the extent the defendant contends some of the allegations in the indictment are not admissible, the court may address these concerns by summarizing the indictment for the jury, instead of reading

14

it, at the beginning of trial, and to the extent evidence is held inadmissible, related allegations in the indictment can be stricken before the indictment is provided to the jury for deliberations).[2]

For these reasons, the court **RECOMMENDS** that Defendant J.G.'s motion [Doc. 46] to strike surplusage be **DENIED**.

## IV.   Motion for Severance

Pursuant to Fed. R. Crim. P. 14, Defendant J.G. seeks a severance for trial from his co-Defendant E.G. contending (1) that he will be prejudiced by the "spill over" of evidence introduced against E.G., (2) that his and his co-Defendant's defenses are mutually exclusive, and (3) that, if his co-Defendant does not testify at trial, his attorney will not be able to comment on her silence as evidence of his innocence. [Doc. 48].   The Government opposes the motion for severance [Doc. 55], and Defendant did not reply.

Defendant seeks a severance based on Fed. R. Crim. P. 14.  "Rule 14(a) states, 'If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant

---

[2]The Eleventh Circuit Court of Appeals "ha[s] found that a defendant was not unduly prejudiced by language that was not stricken from an indictment where the court provided the jury with only a summary of the indictment that did not include references to the disputed language." <u>Byre</u>, 318 Fed. Appx. at 880.

or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires.'" United States v. Blankenship, 382 F.3d 1110, 1120 (11ᵗʰ Cir. 2004).  The Eleventh Circuit Court of Appeals further has stated, "We have long recognized that 'a District Court confronted with a Rule 14 Motion for Severance is required to balance any . . . prejudice [to the defendants] against the interests of judicial economy, a consideration involving substantial discretion.'"  Id. (citation omitted).  "In practice, the general rule is that defendants who are jointly indicted should be tried together, particularly in conspiracy cases." United States v. Baker, 432 F.3d 1189, 1236 (11ᵗʰ Cir. 2005); see also United States v. Browne, 505 F.3d 1229, 1268 (11ᵗʰ Cir. 2007) (same).  To justify severance, a defendant must show compelling prejudice to the conduct of his defense resulting in fundamental unfairness.  See Baker, 432 F.3d at 1236; United States v. Schlei, 122 F.3d 944, 984 (11ᵗʰ Cir. 1997).  "'This is a heavy burden, and one which mere conclusory allegations cannot carry.'" United States v. Walser, 3 F.3d 380, 386 (11ᵗʰ Cir. 1993) (quoting United States v. Hogan, 986 F.2d 1364, 1375 (11ᵗʰ Cir. 1993)); see also Browne, 505 F.3d at 1268.

As noted, Defendant J.G. is charged with a conspiracy to commit wire fraud along with his co-Defendant E.G.  It is the general rule in conspiracy cases that "defendants indicted together should be tried together." United States v. Cassano, 132

16

F.3d 646, 651 (11th Cir. 1998); see also Browne, 505 F.3d at 1268 (noting that it "is particularly true in conspiracy cases" that persons indicted together be tried together); United States v. Gossett, 877 F.2d 901, 904 (11th Cir. 1989) ("Generally, coconspirators should be tried jointly.").  Although this is not quite an ironclad rule, the "exceptional circumstances justifying a deviation from the rule . . . are few and far between."  United States v. Lopez, 649 F.3d 1222, 1234 (11th Cir. 2011).  In order to overcome this presumption and to establish that severance of Defendants is mandated pursuant to Rule 14, Defendant must not only show specific prejudice but also that "'there is a serious risk that a joint trial would compromise a specific trial right . . ., or prevent the jury from making a reliable judgment about guilt or innocence.'"  Blankenship, 382 F.3d at 1123 (citation omitted).  Additionally, Defendant must demonstrate "that a severance is the only proper remedy for that prejudice - jury instructions or some other remedy short of severance will not work." Lopez, 649 F.3d at 1234 ("Because limiting instructions usually will cure any prejudice resulting from a joint trial, . . . the Supreme Court has indicated that severances need be granted only if there is a serious risk that a joint trial would either 'compromise a specific trial right of one of the defendants' or 'prevent the jury from making a reliable judgment about

17

guilt or innocence' even if limiting instructions are given.") (citation omitted). Defendant has not made this showing.

The arguments that Defendant J.G. makes regarding potential infringement of a specific trial right by a joint trial in this case do not warrant granting a severance. Defendant opines that his and co-Defendant E.G.'s defenses are mutually antagonistic due to the fact that his defense "will be that financial matters of the business was the responsibility of [E.G.] and her workers" while E.G.'s defense "will be that the people working for her, including [J.G.], were responsible for communicating with the customers and no one ever told her that communications were untrue."   [Doc. 48 at 2]. While "[t]he assertion of mutually antagonistic defenses may satisfy the test for compelling prejudice[,] . . . [t]o warrant severance, defenses must be antagonistic to the point of being irreconcilable or mutually exclusive." Cassano, 132 F.3d at 652 (citations and internal quotation marks omitted); see also United States v. Knowles, 66 F.3d 1146, 1159 (11ᵗʰ Cir. 1995) ("[d]efenses can only be found to be antagonistic if the jury, in order to believe the core of testimony offered on behalf of [one] defendant must necessarily disbelieve the testimony offered on behalf of his codefendant'") (citations omitted).  The fact that the evidence of one defendant may inculpate a co-defendant does not mandate severance. Blankenship, 382 F.3d at 1125-26 (court found

18

that attorney's "vitriolic mudslinging" against co-defendants and shifting blame to co-defendants did not establish grounds for severance); United States v. Talley, 108 F.3d 277, 280 (11th Cir. 1997) (finding that the defendants' defenses, "consisting of claiming to be innocent and accusing the other of the crime," did not establish mutually antagonistic defenses requiring severance).    As the Government points out, Defendant's proffer about defenses to be offered at trial simply does not support a finding of mutually antagonistic defenses.  [Doc. 55 at 7].  The court agrees that J.G. "has not shown that in order to believe his argument that [E.G.] and her workers were responsible for the financial matters of the business, the jury must necessarily *disbelieve* [E.G.'s] argument that her workers[, including J.G.,] were responsible for communicating with clients."   [Id. (emphasis in original)].   Furthermore, "any prejudice resulting from mutually antagonistic defenses could be alleviated by proper limiting instructions."  Talley, 108 F.3d at 280 (citing Zafiro v. United States, 113 S. Ct. 933, 939 (1993)); accord United States v. Zaldivar, 292 Fed. Appx. 868, 871 (11th Cir. 2008) (even if prejudice is established by the conflicting defenses presented at trial, "Rule 14 . . . does not mandate that a severance be ordered, but rather permits the court to fashion an appropriate remedy[,]" such as cautionary instructions). Defendant's theories about the defenses at trial simply have not established that

19

mutually antagonistic defenses will be presented at trial or that curative instructions will fail to address his concerns.

And Defendant's supposition about what might happen, if co-Defendant E.G. elects not to testify at trial and his attorney wants to comment on her silence, likewise does not establish a right to a severance.  [Doc. 48 at 3].  In order for a court to allow counsel for one defendant to comment on the silence of another defendant thereby impairing that defendant's Fifth Amendment right to remain silent and requiring a severance, see DeLuna v. United States, 308 F.2d 140, 141 (5th Cir. 1962), the evidence produced at trial must demonstrate clearly mutually antagonistic defenses. See United States v. Johnson, 713 F.2d 633, 652 (11th Cir. 1983) (noting an attorney's "clear duty" to comment on the silence of a co-defendant "does not arise unless the defenses set forth by the co-defendants are truly antagonistic").  In United States v. Graziano, 710 F.2d 691 (11th Cir. 1983), the Eleventh Circuit Court of Appeals stated,

> As De Luna has been construed, the defendant's attorney has a clear duty to comment on a co-defendant's silence only when those comments are necessary to avoid real prejudice to the defendant. . . .  Real prejudice occurs only if the defenses offered by the defendant and the co-defendant are antagonistic and mutually exclusive.

Id. at 694-95 (citations omitted); see also United States v. Baggett, 455 F.2d 476, 477 (5th Cir. 1972); United States v. Wilson, 451 F.2d 209, 215 (5th Cir. 1971).  As noted,

Defendant has not established that his and E.G.'s defenses at trial will be mutually antagonistic. Accordingly, Defendant's conclusory allegations do not establish that a severance should be granted for possible infringement of one of his trial rights.

The second category mandating a severance, that is, preventing the jury from making a reliable judgment, applies generally to three situations. "First, severance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant." Blankenship, 382 F.3d at 1123. In this regard, Defendant summarily contends that eighty percent of the evidence introduced at trial will relate to E.G. and the operation of her business and that he will be prejudiced by the jury's inability to separately consider the guilt of each Defendant based on the evidence introduced against that Defendant. [Doc. 48 at 1]. However, this situation does not involve the mere disparity in the quality or amount of evidence introduced against one or more defendants and only applies where there is a minimal chance that limiting instructions will provide adequate relief. See Baker, 432 F.3d at 1236 (holding that "a defendant does not suffer 'compelling prejudice simply because much of the evidence at trial is applicable only to his codefendants,' . . . even when the disparity is 'enormous'") (quoting Schlei, 122 F.3d at 984). The court notes that, because Defendants are charged with engaging in a conspiracy to

21

defraud clients of the business, MTAF, quite likely evidence about the operation of the business will be admissible against both Defendants, as will any evidence concerning the operation of the scheme to defraud.  Defendant has not shown that he will be unduly prejudiced by the evidence introduced at a joint trial.

Severance is also mandated upon a showing of prejudice "in an extremely narrow range of cases in which the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." <u>Blankenship</u>, 382 F.3d at 1124.  Defendant does not argue that a severance should be granted on this basis. [Doc. 48].  And, "[f]inally, severance is required . . . where one defendant is being charged with a crime that, while somehow related to the other defendants or their overall criminal scheme, is significantly different from those of the other defendants." <u>Id.</u> at 1125.  Defendant also does not argue that this is a factor to consider in granting him a severance.  [Doc. 48].

Finally, as stated by the Supreme Court in <u>Zafiro</u>, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts."  113 S. Ct. at 939.  If compelling prejudice is

22

established at any point in time, this discretion may be exercised by the trial court before or even during trial.  See United States v. Pedrick, 181 F.3d 1264, 1272 (11th Cir. 1999) (based on its continuing duty to grant a severance when compelling prejudice is demonstrated, trial court granted a severance of a defendant during the course of trial); United States v. Kopituk, 690 F.2d 1289, 1316 (11th Cir. 1982) ("[T]he court fulfilled its 'continuing duty at all stages of the trial to grant a severance if prejudice does appear.'") (quoting Schaffer v. United States, 80 S. Ct. 945, 948 (1960)).  The Supreme Court in Zafiro specifically noted that even if prejudice is shown or the risk of prejudice is high, severance is not required and that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." 113 S. Ct. at 938.  All of these decisions are left to the sound discretion of the trial court to address if any situation involving prejudice may arise during trial.  However, at this stage in the proceedings, the court finds that Defendant has not established a basis for granting a Rule 14 severance.

## V.    Conclusion

For the foregoing reasons and cited authority, the court **ORDERS** that Defendants' motions [Docs. 44 and 47] for a bill of particulars be **DENIED**, except for the agreed upon disclosure of the identities of unindicted co-conspirators and/or aiders

23

and abettors, and the court **RECOMMENDS** that Defendant J.G.'s motion [Doc. 46] to strike surplusage and motion [Doc. 48] for severance of Defendants be **DENIED**.

There are no other pending matters before the Magistrate Judge. However, the court is aware of one matter relating to the scheduling of this case for trial. On September 20, 2018, the court met with Defendant Elizabeth Greenhill and her current attorney regarding an attorney representation concern communicated to the court by Defendant. After discussion with Defendant and her current attorney, the court determined that a change in representation was warranted and granted Defendant's request for new counsel. As soon as the court appoints a new attorney, current counsel's representation of Defendant will be terminated. Accordingly, the court anticipates that new trial counsel may request additional time to review the report and recommendation in order to file objections and/or to prepare for trial.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

24

**IT IS SO RECOMMENDED AND ORDERED**, this 20th day of September, 2018.

_____

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

25